UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**MICHELLE MARIE BROWN**                                             **CIVIL ACTION**

**VERSUS**                                                                              **NO: 20-3424**

**SOCIAL SECURITY**                                                        **SECTION "L" (3)**
**ADMINISTRATION**

REPORT AND RECOMMENDATION

Plaintiff Michelle Marie Brown brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §405(g), for judicial review of the final decision of the Commissioner denying her claim for disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") payments under Title II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3). The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reason, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

I.      BACKGROUND

Plaintiff filed her application for DIB and SSI on May 29, 2019, alleging a disability onset date of April 14, 2019. (Rec. Doc. No. 16-1, p. 2). Plaintiff alleged disability due to L4 and L5 bulging discs and tears, deteriorating disc, and pinched right sciatic nerve. *Id*. Plaintiff, born on February 15, 1966, was 53 years old on the date of alleged disability. (Rec. Doc. No. 15-3, p. 2). She has less than a high school education, and has past work experience as a caregiver, cashier, and deli worker. *Id*.

The Social Security Commissioner denied the applications administratively, and Plaintiff

sought a hearing before an administrative law judge ("ALJ"). (Rec. Doc. No. 16-1, p. 2). The ALJ held a hearing on June 4, 2020, where Plaintiff, represented by an attorney, appeared and testified. *Id*. A vocational expert also testified. *Id*. On July 17, 2020, the ALJ issued a decision finding Plaintiff not disabled from her alleged onset date, April 14, 2019, through the date of the ALJ's decision. *Id*.

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).[1] In relevant part, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Rec. Doc. No. 13-2, p. 18). The ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease, facet arthropathy, and radiculopathy affecting the lumbosacral spine with a sprain of associated ligaments, and diabetes mellitus with hyperglycemia. *Id*. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments to qualify for presumptive disability. *Id*. at 19. The ALJ then concluded that the Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except that she would be unable to climb ladders, ropes, or scaffolds; could occasionally stoop, crouch, and climb ramps and stairs; and could frequently kneel and crawl. *Id*. at 21. Further, the ALJ concluded that Plaintiff is unable to perform any past relevant work. Finally, with the assistance of the vocational expert, the ALJ concluded that considering the Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff is capable of performing. *Id*. at 26. Thus, the ALJ determined the Plaintiff was not disabled as defined in the Act.

---

[1] *See also* Section III. Entitlement to Benefits Under the Act, *infra* pp. 4-5.

The Appeals Council denied Plaintiff's request for review on October 19, 2020, making the ALJ's decision the final decision of the Commissioner. (Rec. Doc. No. 16-1, p. 3).

## II. STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at 135. Any of the Commissioner's findings of fact that are supported by substantial evidence are

conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence existed to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III. ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, Plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only his previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or

> mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

### IV.   ISSUES ON APPEAL

Plaintiff raises the following two issues on appeal:

(1) Whether the ALJ committed legal error by failing to properly evaluate the assessments of the treating physicians.

(2) Whether substantial evidence supports an application of medical-vocational guideline 201.10 for a finding of disabled, making the ALJ's failure to so find legal error.

## V. ANALYSIS

### 1. Whether the ALJ committed legal error by failing to properly evaluate the assessments of the treating physicians

Plaintiff contends that the ALJ relied on the opinion of Dr. Cenac to undermine the conclusions of Dr. O'Bryan, the Plaintiff's long-standing treating physician. (Rec. Doc. No. 15-3, p. 8). Plaintiff further states that the ALJ did so despite finding Dr. Cenac's opinion unpersuasive in "overestimating the claimant's remaining functional capacity… that she would be able to lift objects weighing 50 pounds throughout one third of the workday." *Id*. (citing Tr. at 24). Plaintiff notes that Dr. Cenac recommended Plaintiff be limited to night duty, a fact not included in the ALJ's assessment, and that Dr. Cenac documented Plaintiff's worsening condition that led to her inability to continue working. *Id*. Finally, Plaintiff argues that the ALJ used Dr. Cenac's "partial opinion" elicited at the very beginning of Plaintiff's period of disability to counter the weight of "the lengthy narrative statement" given by Dr. O'Bryan over one year later, on June 19, 2020, which was provided after continual treatment and clinical observation of Plaintiff's condition. *Id*. at 9. Thus, Plaintiff contends that "[t]he ALJ's preference of an opinion given two weeks after the onset date and from which relevant portions are omitted over the opinion of the primary doctor who has evaluated Plaintiff for over three years is not supportable and is legal error, requiring remand." *Id*.

The Commissioner argues that there is no merit to the suggestion that the statement of Dr. O'Bryan should receive extra weight as her treating physician, as the regulations were revised for how the agency should consider medical opinions for claims filed on or after March 27, 2017. (Rec. Doc. No. 16-1, p. 6). The Commissioner contends that the ALJ followed the revised regulations in appropriately evaluating the medical opinion evidence. *Id*. at 7.

At the outset, the Court notes that the regulations provide that for claims filed on March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017); *Winston v. Berryhill*, 755 Fed. Appx. 395, 402 n. 4 (5th Cir. 2018). Here, Plaintiff filed her application on May 29, 2019.

These regulations no longer mandate particularized procedures in consideration of opinions from treating sources. Rather, the ALJ should use the following five factors to determine the persuasiveness of the medical opinions or prior administrative medical findings: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. §§404.1520(a)-(c), 416.920c(a)-(c) (2017); *Liguez v. Kijakazi*, 2021 WL 4943321 at *6 (N.D. Tex. Aug. 11, 2021).

The two most important factors in determining the persuasiveness of a medical opinion or prior administrative medical finding are supportability and consistency, and the ALJ must explain how he considered those factors. *Id*. The ALJ may, but is generally not required to, explain how he considered the remaining factors, unless there is also a determination that two or more medical opinions or prior administrative medical findings concerning the same issue are equally well-

supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). Additionally, the ALJ will consider one or more medical opinions or prior administrative medical findings from the same medical source using the above factors and is not required to articulate how he considered each opinion or finding. *Id*. §§ 404.1520c(b)(1), 404.1520c(b)(1) (2017).

In determining the persuasiveness of the medical opinions, the ALJ stated the following regarding Dr. Cenac:

> Christopher Cenac, Jr., M.D., the claimant's own orthopedic surgeon, issued an opinion indicating that, while the claimant would be unable to perform past relevant work, she could perform modified light duty. Exhibit 2F. In July 2018, he limited her to lifting no object weighing greater than 20 pounds. Two months later, he noted that she was not a candidate for lumbar surgery, and that she would be unable to lift objects weighing greater than 25 pounds. Finally, in January in [sic] April 2019, it was the opinion of Dr. Cenac that the claimant would be unable to lift objects weighing in excess of 50 pounds. The undersigned finds that the claimant's own orthopedic surgeon overestimated the claimant's remaining functional capacity when he indicated that she would be able to lift objects weighing 50 pounds throughout one third of the workday. His opinion is found to be unpersuasive, but only in that regard.

(Rec. Doc. No. 13-2, p. 24). Regarding Dr. O'Bryan, the ALJ made the following findings:

> Gerald O'Bryan, M.D., the claimant's own family medicine physician, forwarded an opinion that the claimant is disabled. Exhibits 11F and 13F. The undersigned notes that this is an issue reserved to the Commissioner of Social Security. In September 2019, the claimant's own family practitioner, forwarded an opinion that she could sit/stand/walk for less than two hours during a normal eight-hour workday and that she would need to shift positions at her volition throughout the workday. It was his further opinion that the claimant would need to walk around for 10 minutes during ever 30-minute interval and that she would be off task for 15% of the workday. Additionally, he indicated that the claimant could not perform "low stress" work. Dr. O'Bryan reported that the claimant would be expected to be absent from work more than four days each month based upon her impairments. On the other hand, Dr. O'Bryan informed the reader that he completed the evaluation based upon representations made to him by the claimant. Exhibit 11F, page 4. He also reported that he had no ability to test the answers to questions given by the claimant, which are articulated immediately above.
>
> In June 2020, Dr. O'Bryan issued a follow-up opinion. Exhibit 13F. He noted that:

8

> "She suffers from chronic lower back pain with sciatica of the right leg and [a] tendency to have weakness and falls. She has sought specialty care and treatment for this with poor results and continues with pain. She is currently seeking disability *per her description to me.* (Emphasis added.) <u>She is requesting a letter stating that she cannot stand for 8-12 hours</u> and perform the work she [did] prior as a caregiver for patients with medical problems. (Emphasis added.) Per her report and her MRI and specialty treatment, I can report that she has lower back pain that is constant and has right leg pain and weakness. She has a tendency to have random falls per her [reports]. She states she is unable to stand over 30 minutes without a need to sit. Her constant and continuous need to change position and sit, take breaks, etc., is not amenable to her prior employment, so I can report she is unable to do the task of standing 8-12 hours as she did prior."
>
> Based on the above analysis, the undersigned concludes that the opinion of Dr. O'Bryan is neither consistent nor supported by other evidence appearing in the record and is, thus, unpersuasive. For example, the claimant's own family physician indicated that she was incapable of low stress work even though she does not experience a severe mental impairment. The undersigned notes that Dr. Cenac is an orthopedic surgeon who treated the claimant. It was his opinion that the claimant had a far greater remaining residual functional capacity than did Dr. O'Bryan. Moreover, the undersigned notes that the claimant's remaining residual functional capacity, as found, would not require the claimant to stand for 8-12 hours per workday.

(Rec. Doc. No. 13-2, p. 24-25) (all emphasis in original). Plaintiff contends that these findings show a "preference" for the opinion of Dr. Cenac over that of Dr. O'Bryan, which she argues constitutes legal error because Dr. O'Bryan was her "primary doctor who has evaluated Plaintiff for over three years." (Rec. Doc. No. 15-3, p. 9). However, under the revised regulations, the ALJ weighed the medical opinion evidence correctly, giving no controlling weight to Plaintiff's primary treating physician.

Further, the Court finds that Plaintiff misconstrues the opinion of the ALJ. Plaintiff argues that the ALJ found the opinion of Dr. Cenac "unpersuasive." (Rec. Doc. No. 15-3, p. 8). The ALJ stated clearly that the opinion of Dr. Cenac was only unpersuasive with regard to Plaintiff's ability to lift objects up to 50 pounds, which the ALJ determined was an *overestimation* of Plaintiff's remaining functional capacity. (Rec. Doc. No. 13-2, p. 24). Plaintiff argues that Dr. Cenac recommended night duty, but that the ALJ failed to include this in his opinion. (Rec. Doc. No. 15-

9

3, p. 8). However, in addition to the paragraph quoted in full above, the ALJ referenced Dr. Cenac's treatment multiple times throughout his opinion, specifically noting that Dr. Cenac recommended night shifts only, but "did not give any reason for suggesting that the claimant work only during the night shift." (Rec. Doc. No. 13-2, p. 22). The ALJ found portions of Dr. Cenac's opinion inconsistent, as he initially restricted claimant to lifting no more than 20 pounds in July 2018, but by September of the same year, he indicated she could lift up to 50 pounds while indicating that her "back complaints have become more chronic." *Id*.

The ALJ did not, as Plaintiff contends, use the opinion of Dr. Cenac to find the opinion of Dr. O'Bryan unpersuasive. The ALJ clearly, in the quoted language above, found numerous reasons to question the veracity of Dr. O'Bryan's opinions. Specifically, the ALJ repeatedly notes that the opinion of Dr. O'Bryan was completed based on subjective representations made by Plaintiff, and that he had "no ability to test the answers to questions given by the claimant." (Rec. Doc. No. 13-2, p. 25). Subjective complaints must be corroborated, at least in part, by objective medical findings. *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988) (citations omitted); *Owens v. Heckler*, 770 F.2d 1276, 1281-82 (5th Cir. 1985). Here, the ALJ clearly found that Dr. O'Bryan's opinions were influenced primarily by the Plaintiff's subjective complaints and lacked the support of objective medical findings.

Furthermore, the Fifth Circuit has long held that "[t]he ALJ is free to reject the opinion of any physician where the evidence supports a contrary conclusion." *Hollinger v. Kijakazi*, 857 Fed.Appx. 213, 214 (5th Cir. 2021) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). The ALJ properly considered the medical opinion evidence pursuant to the new guidelines and considered numerous medical opinions when reaching his decision regarding the Plaintiff's RFC. Thus, the ALJ committed no legal error in considering the medical opinion evidence.

## 2. Whether substantial evidence supports an application of medical-vocational guideline 201.10 for a finding of disabled, making the ALJ's failure to so find legal error

Plaintiff contends that the RFC determination is not supported by substantial evidence. (Rec. Doc. No. 15-3, p. 10). Specifically, Plaintiff contends that the RFC determination that she could perform "the standing required by light work is simply not supported by the evidence, nor by Dr. O'Bryan, Plaintiff's long-term treating physician who has treated her severe impairments since her initial injury." *Id*. Plaintiff argues that the ALJ's failure to incorporate further limitations violates the requirement that the ALJ consider all of the evidence in the record when determining an RFC. *Id*. Instead, Plaintiff argues the ALJ should have determined that she has an RFC of "restricted sedentary work." *Id*. at 11. Plaintiff states that the failure to so find warrants reversal of the ALJ's decision based on the medical-vocational guideline 201.10, which directs a finding of disabled for an individual who is limited to sedentary work and who has the vocational and educational background of Plaintiff. *Id*. Plaintiff does not point to any specific evidence in the record to indicate that she meets medical-vocational guideline 201.10.

The Commissioner contends that Plaintiff is attempting to "grid out" under the Medical-Vocational Guidelines. (Rec. Doc. No. 16-1, p. 9) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2). However, the Commissioner notes, there is no merit to the contention that she is entitled to use the Grid Rules as a shortcut to a finding of disability, as her record does not fit into the boxes of Grid Rule 201.10. *Id*. The Commissioner states that the ALJ properly assessed the facts of this case. *Id*.

First, the Court addresses the argument that the ALJ's RFC determination is not supported by substantial evidence. Under the regulations and Fifth Circuit jurisprudence, the determination of residual functional capacity is the sole responsibility of the ALJ. *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)). Plaintiff points

to the medical evidence that documents her "pain and [] frequent falls," and the assessment of her inability to perform light work by Dr. O'Bryan. (Rec. Doc. No. 15-3, p. 10). The medical records fail to corroborate these complaints. The ALJ considered the two falls noted in the medical record—one in April 2018 before the alleged onset date and another in 2019 that resulted in a pinky toe fracture. (Rec. Doc. No. 13-2, pp. 20, 23-24). The ALJ then noted that Plaintiff testified to another fall the night before the hearing, but never supplemented the record with medical documentation. *Id*. at 21. Further, the ALJ noted that Plaintiff brought a cane to the hearing, but did not have a prescription *Id*. Finally, the ALJ found that Plaintiff was managing her pain with 800 mg Ibuprofen and a back brace. *Id*. The ALJ concluded that, "[t]he objective clinical and laboratory findings establishing the functionally limiting impairments failed to disclose any organic abnormality capable of producing pain of incapacitating proportions or that the claimant would be precluded from all work activities." (Rec. Doc. No. 13-2, p. 23). The Court has already addressed the argument regarding the persuasiveness of Dr. O'Bryan's opinion *supra* Section V(1). Thus, there is ample evidence in the record to suggest Plaintiff is capable of light work, with limitations, as the ALJ concluded.

Additionally, the Court emphasizes that its "limited role … under 42 U.S.C. § 405(g) is … not to reweigh the evidence, … try the issues de novo, or substitute the judgment of the court for that of the [Commissioner]." *Hollinger*, 857 Fed.Appx. at 215 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983); *accord Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) ("Conflicts in the evidence are … not [for] courts to resolve."). Instead, the Court looks to whether "a reasonable mind would support the [ALJ's] conclusion." *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021). Plaintiff invites the Court to reweigh the evidence to reach a different RFC determination, and that this Court cannot do.

Turning to the argument that substantial evidence supports a finding of disabled using the Medical Vocational Guidelines, the Court disagrees. When the Commissioner decides at Step 5 that an applicant can perform available, alternative employment, that decision must be supported by substantial evidence. *Allsbury v. Barnhart*, 460 F.Supp.2d 717, 721 (E.D. Tex. Jul. 13, 2006). Typically, the Commissioner satisfies that burden in two ways: (1) receiving testimony from a "vocational expert" or considering similar "vocational resource" evidence, or (2) taking administrative notice of availability of alternative work by consulting predetermined findings contained in the "Medical Vocational Guidelines," commonly called "the grids." *Id*. The grids consist of three tables for sedentary, light, and medium work, which may be consulted once a claimant's RFC is determined to direct conclusions of disability or non-disability based upon the claimants age, education, and previous work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201-03 (2005); *Allsbury*, F.Supp.2d at 721, n. 5. Individual factors for a particular applicant are compared to the general findings in the grids, and the Commissioner then determines whether alternative work that the particular applicant can perform exists in the national economy. *Id*. If the grids produce a finding that substantial jobs are *not* available, the application for benefits is approved, whereas, if the grids produce a finding that jobs *are* available, the application is denied. *Id*.

"Grid Rules" were promulgated to improve the uniformity and efficiency of the five-step determination. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983). They are an efficient mechanism to ascertain whether a claimant can perform other work, but the structure only applies in suitable cases, specifically, those that match the grid's hypothetical individual of the same physical exertional ability, age, education, and prior work experience. *See* 20 C.F.R. Pt. 404, Subpt. P, App.

2. The regulatory introduction explains that while the Grid Rules provide a rebuttable conclusion, more analysis is required for cases that do not fit the grid:

> Where any one of the findings of fact does not coincide with the corresponding criterion of a rule, the rule does not apply in that particular case, and, accordingly, does not direct a conclusion of disabled or not disabled. In any instance where a rule does not apply, full consideration must be given to all of the relevant facts of the case in accordance with the definitions and discussions of each factor in the appropriate sections of the regulations.

Pt. 404, Subpt. P, App. 2, at 200.00(a); *see also* (Rec. Doc. No. 15-6, p. 1).

The Commissioner contends that Plaintiff uses the wrong grid in her argument, specifically Grid Rule 201.10, which applies only to persons capable of sedentary work. (Rec. Doc. No. 16-1, p. 10). As noted previously, the ALJ determined that the RFC limited her to light work, with limitations (Rec. Doc. No. 13-2, p. 20-21), and the Court has already determined that the RFC determination is supported by substantial evidence. Thus, the grid for light work would be consulted, and its matching Grid Rule would be 202.10 for a finding of not disabled. (*See* Rec. Doc. No. 15-6, p. 7). Therefore, the Grid Rule approach, based on the Plaintiff's determined RFC, does not permit a finding of disability.

In fact, the ALJ's reliance on vocational expert testimony in determining that jobs were available to the Plaintiff is in line with Fifth Circuit precedent. The Commissioner points out that the ALJ properly declined to apply the grid rules because Plaintiff has non-exertional limitations. (Rec. Doc. No. 16-1, p. 10). Instead, the ALJ considered the record and the vocational expert testimony to determine that Plaintiff could perform light work as a counter clerk, usher, or furniture rental consultant. *Id*. "If impairments are solely exertional or the nonexertional impairments do not sufficiently affect the claimant's residual functional capacity, then the Commissioner may rely exclusively on the Grids to determine whether there is other work in the economy that the claimant can perform." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000) (citing *Fraga v. Bowen*, 810

F.2d 1296, 1304 (5th Cir. 1987)). However, if a claimant suffers from nonexertional impairments or a combination of exertional and nonexertional impairments, then the Commissioner must rely on a vocational expert to establish that jobs exist in the economy. *Id*. Exertional limitations relate to the ability to meet the strength demands of jobs, whereas nonexertional limitations affect your ability to meet the demands of jobs in other ways, such as difficulty functioning from anxiety or depression. 20 C.F.R. § 404.1569a(b)-(c). In this case, Plaintiff has both exertional and nonexertional limitations, as she has anxiety. (Rec. Doc. No. 13-2, p. 20). Therefore, the ALJ correctly relied on the testimony of a vocational expert in determining that jobs exist in significant numbers in the national economy that she could perform. Therefore, the ALJ made no legal error in deciding not to rely on the grids, and substantial evidence supports the ALJ's RFC determination for light work, with limitations.

### VI. CONCLUSION

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE.**

## NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 2nd day of June, 2022.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**